# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 14-104V
(to be Published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | Special Master Corcoran |
| ANIL JOHN KUKREJA, *and* MICHAL * | |
| KUKREJA, *parents of* D.K., *a minor*, * | |
| * | Filed: September 5, 2017 |
| Petitioners, * | |
| v. * | Attorney's Fees and Costs; |
| * | Pro Se Claimants; Undisclosed |
| SECRETARY OF HEALTH * | Representation of Claimants |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

*Lisa A. Roquemore*, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA for Petitioners.

*Claudia B. Gangi,* U.S. Dep't of Justice, Washington, DC for Respondent.

**DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS[1]**

On February 6, 2014, Anil John and Michal Kukreja filed a petition on behalf of their son, D.K., seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioners allege that D.K. suffered from myoclonic seizures as a result of his February 7, 2011, receipt of the influenza ("flu") and/or Hepatitis A vaccines. After nearly three years of filing medical records and expert reports in preparation for a hearing scheduled in October

---

[1] This decision will be posted on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

2016, the parties filed a stipulation for damages, for the sum total of $15,000.00. *See* Stipulation, dated Jan. 24, 2017 (ECF No. 54). Shortly thereafter, I issued a decision on damages consistent with the stipulation. *See* Decision, dated Jan. 27, 2017 (ECF No. 56).

Petitioners have now filed a motion for final attorney's fees and costs, requesting a combined amount of $112,791.60 ($80,410.20 in attorney's fees, $23,217.36 in costs expended by Petitioners' counsel, and $9,164.04 in costs for Petitioners' personal litigation costs). Motion for Attorney's Fees and Costs, dated July 12, 2017 (ECF No. 61) ("Fees App."). Respondent reacted on July 25, 2017, stating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount to be awarded. ECF No. 63. For the reasons stated below, I hereby **GRANT IN PART** Petitioners' request for fees and costs.

**Background**

This case was initiated by the Kukrejas in February 2014 as *pro se* Petitioners. I originally set a deadline that all medical records and a statement of completion should be filed by May 26, 2014, but that deadline was extended numerous times to assist the Kukrejas with document gathering. The statement of completion was filed on November 17, 2014, followed shortly by Respondent's Rule 4(c) Report. Thereafter, I held a status conference, encouraging Petitioners to seek counsel, and also setting a deadline for Petitioners to file an expert report. *See* Scheduling Order dated, Jan. 13, 2015 (ECF No. 22). At this time, Petitioners stated that they had retained an attorney, and I accordingly instructed that attorney to promptly enter an appearance in the case. *Id*. Petitioners' current counsel, Lisa A. Roquemore, Esq., did so on February 2, 2015. (ECF No. 23).

Despite the appearance that the Kukrejas were *pro se* through February 2015, a review of Ms. Roquemore's billing invoices submitted with the present fees motion reveals that she had actually been advising the Kukrejas since August 2013—over six months before they filed their case, and a year and a half before she entered an appearance in the case. *See generally* Fees App., Exhibit 2. The billing invoices demonstrate that during this time, Ms. Roquemore was reviewing all the filings of the court (in paper form, since she was not yet the attorney of record and therefore lacked direct electronic access to the docket). In this eighteen-month period, Ms. Roquemore billed 60.6 hours to the matter, for a total of $16,646.00 – more than the settlement sum.

After Ms. Roquemore entered her appearance, the case proceeded on a litigation track. The parties subsequently filed several expert reports, and then an entitlement hearing was scheduled for October 2016. However, the case never went to hearing, as a 15-week order was issued on September 30, 2016, at the request of the parties, in order to provide them the opportunity to settle the matter. As noted above, those settlement discussions were successful, although they produced a relatively modest award in comparison to the work the parties put into the case. The sole remaining issue for resolution is what fees and costs to award counsel.

**ANALYSIS**

The Vaccine Act permits an award of reasonable attorney's fees and costs to successful litigants, and therefore *some* fees and costs award herein is warranted. Section 15(e). Fees in Vaccine Program cases are generally calculated pursuant to the "lodestar method," whereby the special master determines if the attorney's hourly rate and time devoted to the matter are reasonable. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008)

Though Respondent has not lodged an objection to the sum requested, special masters have discretion to determine the reasonableness of a fees award sua sponte. *Sabella v. Sec'y of Health & Human Servs.*, 96 Fed. Cl. 201, 208-09 (2009); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). Here, I find adjustment to the requested amount is warranted, for the reasons stated below.

I.   Hourly Rates

An attorney's reasonable hourly rate is determined by the "forum rule," which applies the hourly rate paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). The hourly rate ranges for attorneys of different levels of experience who are entitled to the forum rate in Vaccine Program cases were recently set forth in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), a decision that I and the other special masters have embraced as a fair calculation of forum rates.[3]

Petitioners request reimbursement for the work performed by Ms. Roquemore from 2013-2017. In 2013, Ms. Roquemore billed at an hourly rate of $355; from 2014-2015 her hourly rate was $365; and for 2016-2017 she charged $400 per hour. Ms. Roquemore, who practices law in Southern California, has previously been found entitled to forum rates consistent with the rates requested. *See e.g. Davis v. Sec'y of Health & Human Servs.,* No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. Mstr. Jan. 23, 2017)*; Taylor v. Sec'y of Health & Human Servs.*, No. 14–861V, 2016 WL 5390169 (Fed. Cl. Spec. Mstr. Sept. 2, 2016); *Raicevic v. Sec'y of Health & Human Servs.*, No. 14–554V, 2016 WL 5362695 (Fed. Cl. Spec. Mstr. Aug. 31, 2016). Here, I find that the rates Petitioners request are appropriate in light of such prior persuasive decisions.

Petitioners also request payment for paralegal work at the hourly rate of $125 for all work

---

[3] The *McCulloch* forum rate ranges have been compiled into a chart and posted to the Vaccine Claims section of the United States Court of Federal Claims website. This forum hourly rate fee schedule can be accessed at: http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

performed during the case's pendency. Fees App., Exhibit 2. These requested rates are also consistent with *McCulloch,* and will be awarded. *McCulloch*, 2015 WL 5634323, at *21.

II.     Hours Performed on the Matter

Although I am accepting the rates requested herein with no additional commentary or analysis, I do not find that the reasonableness of the total hours devoted to this matter is as clear-cut, for two reasons.

First, I have concerns about the magnitude of time devoted to the case. Ms. Roquemore and her paralegal billed 260.4 hours on the matter, for a total of $80,410.20. A Vaccine Program case that settles for $15,000.00 should not cost nearly five times that amount – yet that is the sum requested by Petitioners. Even though the Act clearly allows the recovery of fees by prevailing claimants, special masters still possess the discretion to modify the sum awarded. Circumstances such as those herein – where the Petitioners are represented by counsel with considerable experience in the Program, and who is aware of the need to exercise proper billing judgment[4] – cry out for a downward modification. Otherwise, counsel have no incentive to exercise any care at all in what tasks they perform on a Vaccine Program matter.

Second, I am alarmed by the fact that counsel seeks reimbursement for work performed long before she appeared formally in the case. As the billing records reveal, Ms. Roquemore was contacted by Petitioners on August 3, 2013 – six months before filing. But it was my impression that the Kukrejas were attempting to adjudicate their claim like any *pro se* claimant – not that they had shadow counsel just waiting for the right time to appear – and in the interests of permitting them a full and fair opportunity to litigate the claim, I afforded them leniencies that experienced counsel like Ms. Roquemore would not receive.[5] The facts disclosed by the attorney invoices suggest strongly that counsel's decision to appear may have been tactical in nature, rather than the result of a *pro se* claimant's success in convincing an attorney that his claim had merit.

I have not previously encountered a fees request in which the attorney of record billed nearly a quarter of her total time before she entered an appearance more than a year after filing, all

---

[4] Although this is the first fees award I have made in which I was required to consider the reasonableness of tasks performed by Ms. Roquemore specifically, I note that she has been criticized in the past for not exercising sufficient billing judgment in Vaccine Program cases. *See, Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685, 2016 WL 909186, at *8-9 (Fed. Cl. Spec. Mstr. Feb. 17, 2016).

[5] Special masters generally take extra time assisting *pro se* petitioners, to ensure they have a good understanding of the proceedings in the Program—a practice that is wasted if the *pro se* petitioner is already being advised. In addition, *pro se* petitioners are often, as was the case here, allowed liberal extensions of time with records-filing deadlines, given their likely unfamiliarity with document gathering. But when an experienced Program attorney is actually behind the scenes, it could appear that the attorney is doing nothing more than trying to take advantage of the client's *pro se* status.

while she was actively advising Petitioners on every aspect of their case. While it does not appear that this practice is explicitly forbidden by the Program or by the ethical rules of California[6] or D.C., it has an untoward quality and should not be encouraged in the future. Indeed, it is especially inappropriate herein, where counsel are not paid by their clients but through the Vaccine Program itself. Although a private individual might well agree to permit an attorney to act as occurred herein, he would do so with full knowledge of the existence of the hidden attorney relationship. But to obtain a special master's approval for such an arrangement, it would need to have been similarly disclosed in advance, which did not occur in this case.

Because of such concerns, I will make two adjustments to the total fees requested. First, I will not award <u>any</u> hours spent prior to when Ms. Roquemore was substituted as counsel in the case in February 2015. This results in an initial $16,646.00 reduction.

Second, I will reduce the total sum of the fees side of the award for all post-appearance work by twenty percent, to account for the gross disparity between the damages awarded by stipulation and sum billed to the matter. This reflects an admittedly "big picture" attempt to account for work unnecessarily performed on the matter[7], while also ensuring that a successful claimant *does* receive a fee award (and reducing the amount of second-guessing on my part as to whether the case warranted the time devoted to it). In this way, I can achieve the "rough justice" that the Supreme Court instructs I should aim for in adjusting fees requests. *See Fox. Vice*, 563 U.S. 826, 131 S. Ct. 2205 (2011).

As stated previously, Ms. Roquemore requested $80,410.20 in total attorney's fees. After applying the deduction for the time expended prior to entering the case, the amount of fees is $63,764.20. Twenty percent of that sum leaves a total award for attorney's fees of $51,011.36 ($63,764.20 x .8= $51,011.36).

III.   <u>Litigation Costs</u>

Petitioners also request several categories of litigation costs—miscellaneous litigation

---

[6] The American Bar Association issued a formal opinion on "ghostwriting"—the practice where an attorney is hired to draft filings for litigants without entering a formal appearance in the case—which stated that while the states may differ in their opinion, there is no formal rule forbidding it. Am. Bar Ass'n, Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007).

[7] Although I am not obligated to go line-by-line in adjusting a fees request in accordance with my discretion, I do note that the billing invoices in this case present several examples of extra work unnecessarily performed on this matter. For example, over the life of the case Ms. Roquemore billed nearly 6 hours to prepare for status conferences that were merely for scheduling. Fee App., Exhibit 2 at 17, 21, 30, 32, 35. Moreover, she also billed during this time for reviewing medical records and emailing with parties with case updates, presumably keeping herself up to date on the case in the process, making billing for the review of the case the day of a status conference potentially redundant. *Id*. at 16, 21, 24, 26, 27, 32, 35.

costs expended by Ms. Roquemore, expert costs paid by Ms. Roquemore, and litigation expenses owed to the Petitioners themselves.

First, Petitioners request $492.36 for miscellaneous costs, such as obtaining medical records, postage, and copying fees. *See generally* Fees App., Exhibit 2. That amount is reasonable and I will award it as requested.

Second, Ms. Roquemore requests costs for the expert reports from Dr. Steinman ($15,125.00) and Dr. Shafrir ($7,600.00) (after deducting the retainers paid for each expert by Petitioners). Dr. Steinman billed 34.5 hours, reflecting review of records and two expert reports at an hourly rate of $500. This rate has been awarded for Dr. Steinman by other special masters and myself. *See, e.g.*, *Dezern v. Sec'y of Health & Human Servs.*, No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016; *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2016 WL 909186, at *11 (Fed. Cl. Spec. Mstr. Feb. 17, 2016); *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2012 WL 952268, at *10-11 (Fed. Cl. Spec. Mstr. Feb. 29, 2012). While it is certainly regrettable that Dr. Steinman's expert costs alone are in excess of the settlement amount, I will nonetheless award him the total fees requested, as it is likely his input aided in the case's resolution.

Similarly, Dr. Shafrir requests $7,600.00 for 26 hours of work at a rate of $350 per hour. *See generally*, Fees App., Exhibit 17. This rate is consistent with what he has been awarded previously and I will award it in full. *Whitney v. Sec'y of Health & Human Servs.,* No. 10-809, 2016 WL 4494199 (Fed. Cl. Spec. Mstr. July 27, 2016).

Finally, Petitioners request $9,164.04 in personal costs that they separately incurred in connection with this litigation. Fees App. at 2. That amount includes $918.07 in filing fees and postage, and $3,500 in retainers for Dr. Steinman and Dr. Shafrir. Fees App at 2, Exhibits 5-6. I will award all of these costs, as they appear to be reasonable.

The above sum also includes costs associated with a guardianship proceeding – $3,963.32 for a guardianship attorney, and $782.65 incurred by the Kukrejas to travel to and attend the guardianship hearing. Fees App at 2, Exhibits 5-6. The stipulation provides for a guardianship to be established within 90 days of entering the stipulation, thus the billing entries from the guardianship are from February to March 2017, completing the process exactly two months after the stipulation was entered. *Id.*

These kinds of guardianship-related costs have been awarded in the Program. Costs incurred in direct connection with the terms of a judgment can be reasonably construed as "proceedings on a petition" (Section 15(e)(1)) because they are only incurred as a condition of payment. *See Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 782 (2010). Special

masters (including me) have therefore awarded such costs where the guardianship is established as a condition of the settlement and/or judgment in the matter. *See, e.g.*, *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *5 (Fed. Cl. Spec. Mstr. May 13, 2014); *Torres v. Sec'y of Health & Human Servs.*, No. 09-867V, 2013 WL 2256136 (Fed. Cl. Spec. Mstr. Apr. 30, 2013); *Cansler v. Sec'y of Health & Human Servs.*, No. 09-596V, 2011 WL 597791 (Fed. Cl. Spec. Mstr. Feb. 2, 2011); *Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

In this case, I have some hesitancy to award the travel costs Petitioners incurred in connection with the guardianship. However, I will award them because it appears that California requires future guardians to make a court appearance prior to being awarded guardianship. *See Guardianship of Children*, The Superior Court of California, http://www.sfsuperiorcourt.org/divisions/probate/guardianship-children#3 (last accessed Aug. 29, 2017). These costs are therefore sufficiently associated with the guardianship to make them "incurred" in connection with the petition.

## CONCLUSION

Accordingly, and in the discretion afforded to me, I hereby **GRANT IN PART** Petitioners' motion for attorney's fees and costs. An award of **$74,228.72** should be made in the form of a check payable jointly to Petitioners and Petitioners' counsel, Lisa A. Roquemore, Esq. I separately award the amount of **$9,164.04** to Anil and Michal Kukreja for reimbursement of their personal costs associated with this matter. Payment of this amount represents all attorney's fees and costs available under 42 U.S.C. § 300aa-15(e).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

**IT IS SO ORDERED.**

      /s/ Brian H. Corcoran
      Brian H. Corcoran
      Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.