# In the United States Court of Federal Claims

No. 14-104V

(Filed Under Seal: December 22, 2017)

(Reissued: January 8, 2018)

```
*********************************
ANIL JOHN KUKREJA AND           )    Vaccine case; attorney's fees and costs;
MICHAL KUKREJA, parents of D.K.,)    basis for percentage reduction in fees
                                )
         Petitioners,           )
                                )
   v.                           )
                                )
SECRETARY OF HEALTH AND         )
HUMAN SERVICES,                 )
                                )
         Respondent.            )
                                )
*********************************
```

Lisa A. Roquemore, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA for petitioner.

Claudia B. Gangi, Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the brief was Chad A. Readler, Acting Assistant Attorney General, Civil Division, and C. Salvatore D'Alessio, Acting Director, Torts Branch, Catharine E. Reeves, Deputy Director, Torts Branch, and Heather L. Pearlman, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Judge.

In February 2014, petitioners, Anil and Michal Kukreja, filed a compensation claim on behalf of their son, D.K., pursuant to the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, §§ 301-323, 100 Stat. 3743, 3755 (1986) (currently codified, as amended, at 42 U.S.C. § 300aa-1 *et seq.*) (the "Vaccine Act"). D.K. was diagnosed with and suffered from myoclonic seizures subsequent to receiving an influenza and Hepatitis A vaccination. The Kukrejas initially filed their claim *pro se* while being advised by a veteran Vaccine Act attorney,

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B, Rule 18(b), this opinion and order was initially being filed under seal. By rule, the parties were afforded fourteen days within which to propose redactions.

Ms. Lisa Roquemore. In due course, Ms. Roquemore filed a motion for substitution as the Kukrejas' attorney in February 2015. The case proceeded on a litigation track through 2016 before it was eventually settled in January 2017.

The Kukrejas filed a motion for attorneys' fees and costs on July 12, 2017. The government did not object, deferring to the special master's discretion in determining the award. The special master determined that both the hourly rate charged by Ms. Roquemore and all litigation costs were reasonable, but he reduced the hours charged on two grounds. He categorically excluded all of the hours that Ms. Roquemore expended prior to her appearance, and he curtailed the otherwise allowable hours by twenty percent. Petitioners filed a motion for reconsideration, asking for a hearing to address the special master's concerns and seeking an attorneys' fees award for the work done on the motion itself. The special master denied the motion in its entirety.

On October 4, pursuant to RCFC App. B, Rule 23, petitioners filed a motion for review of the special master's decision on fees. Petitioners contend that the special master committed legal errors and abused his discretion by failing to provide with specificity the reasons for decreasing the allowable hours. The government filed a response opposing this motion on October 30, 2017.

## BACKGROUND

On behalf of their son, D.K., the Kukrejas filed a *pro se* claim for compensation pursuant to the Vaccine Act on February 6, 2014. *See* Mot. for Review ("Pet'r's Mot.") at 2, ECF No. 68. The basis for their claim was that D.K. suffered from myoclonic seizures subsequent to receiving an influenza and Hepatitis A vaccination. Resp. to Mot. for Review ("Resp't's Resp.") at 2, ECF No. 72. Approximately six months prior to filing their claim, the Kukrejas had contacted Ms. Roquemore to represent them and discussed "the Vaccine Program . . . in general." Pet'r's Mot. at 2. The statute of limitations for the Kukrejas' claim would lapse on February 7, 2014 and, due to prior obligations, Ms. Roquemore "could not conduct her 'reasonable basis' due diligence" before that date, so the Kukrejas filed their son's claim *pro se* on February 6, 2014. *Id.* The Vaccine Act sets out a compensation system that includes provision of attorneys' fees for successful claimants and for unsuccessful claimants whose petitions are "brought in good faith" and supported by "a reasonable basis." 42 U.S.C. § 300aa-15(e)(1). Because attorneys who litigate under the Act cannot charge fees to their clients, they must determine that there is a reasonable basis for any claims they bring before they can be sure that they will be compensated for their work. *See Kukreja v. Secretary of Health & Human Servs.*, 2017 WL 5383097, at *3 (2017) ("[C]ounsel are not paid by their clients but through the [V]accine [P]rogram itself.").[2]

---

[2] The Vaccine Act prohibits attorneys from charging any fee for services in connection with a vaccine injury petition. *See Sebelius v. Cloer*, 569 U.S. 369, 373 (2013) (citing 42 U.S.C. § 300aa-15(e)(3)). "Instead, the special master or court awards attorneys' fees and costs, and [such] award[s are] paid from the [F]ederal [V]accine [T]rust [F]und." *Raymo v. Secretary of Health & Human Servs.*, 129 Fed. Cl. 691, 701 (2016) (citing 42 U.S.C. § 300aa-15(e)(1), (f)(4), (i)(2); *see also Rehn v. Secretary of Health & Human Servs.*, 126 Fed. Cl. 86, 91 (2016)).

From the special master's perspective, the Kukrejas continued to proceed *pro se* until, on January 7, 2015, the special master encouraged them to retain counsel, to which they responded that they had done so. Resp't's Resp. at 2. The special master instructed that their attorney should "promptly enter an appearance in the case" and Ms. Roquemore did so on February 2, 2015. *Id.* Earlier, for several months after the Kukrejas had filed their petition *pro se*, Ms. Roquemore spent some time reviewing D.K.'s medical records and advising the Kukrejas of procedural steps regarding their claim. Beginning in July 2014, however, she considered the Kukrejas to be "potential client[s]" and began working to identify and retain experts. *See* Pet'r's Mot. for Att'ys' Fees Ex. 2, at 4, ECF No. 61-2. A few months later, a retainer agreement was executed with the Kukrejas in September 2014. *See id.* at 6. Then, after receiving "an expert report draft in support of the case" in late January 2015, Ms. Roquemore determined that a reasonable basis now existed, and she filled a motion for substitution of counsel. *Id.* at 3.

The case "proceeded on a litigation track." Resp't's Resp. at 2. Petitioner's pre-hearing submissions were due in August 2016, and the entitlement hearing was scheduled for October of the same year. *Id.* "However, following the submission of pre-hearing memoranda, the parties reached an informal resolution of the case," *id.*, and an "order was issued on September 30, 2016, . . . to provide [the parties] the opportunity to settle the matter." *Kukreja*, 2017 WL 5383097, at *2. The case was subsequently settled for $15,000 on January 27, 2017, nearly three years after the claim was filed. *See* Resp't's Resp. at 2-3.

On July 12, the Kukrejas filed a motion for attorneys' fees and costs, seeking "$80,410.20 in attorney[s'] fees, $23,217.36 in [expert] costs expended by petitioners' counsel, and $9,164.04 for petitioners' personal litigation costs, for a total of $112,791.60." Resp't's' Resp. at 3; *see also* Pet'r's Mot. at 3. The government "deferr[ed] to the special master's discretion the determination of the amount to be awarded." *Id.* The special master determined that Ms. Roquemore's hourly rates were reasonable, as were all litigation costs sought. *Kukreja*, 2017 WL 5383097 at *2, **4-5. But the special master reduced the attorneys' fees, determining that the hours performed on the matter were unreasonable. *See id.* **2-4. The special master first categorically excluded the hours performed "prior to when Ms. Roquemore was substituted as counsel" because he "ha[d] not previously encountered a fees request in which the attorney of record billed nearly a quarter of her total time before she entered an appearance[,] more than a year after filing, all the while . . . actively advising [p]etitioners on every aspect of their case." *Id.* at *3. He also opined that "facts disclosed by the attorney invoices suggest strongly that counsel's decision to appear may have been tactical in nature." *Id.* at *3. This step reduced the award by $16,646. *Id.* at *4. Next, the special master "reduce[d] the total sum of the fees . . . for all post-appearance work by twenty percent" due to "the gross disparity between the damages awarded [in the settlement] and [the] sum billed to the matter." *Id.* at *4. This further reduced the award by $12,752.84, for a resulting attorneys' fee award of $51,011.36. *Id.*

In response, petitioners filed a motion for reconsideration on September 11, 2017. *See generally* Pet'r's Mot. for Recons. of the Special Master's September 4, 2017 Decision Awarding Att'ys' Fees ("Mot. for Recons."), ECF No. 65. The motion was filed because "[n]o hearing or oral argument occurred in regard to the [f]ee [a]pplication or the stated concerns of the [s]pecial [m]aster. Thus, no ability to respond to the [c]ourt's [*sic*] concerns was afforded." *Id.* at 2, 12 ("Oral argument is requested . . . ."). Included in the motion was a request for an

3

attorneys' fee award of $6,341 for the work done on the motion itself. *Id.* Attach. A at 1-2. The special master issued an order denying the motion for reconsideration and petitioners' request for additional attorney's fees on September 29. Order Den. Mot. to Recons. Fees Decision ("Order Den. Recons.") at 6 & n.6, ECF No. 67. The order offered a more complete explanation of the special master's reasoning, but he did not grant a hearing or afford any additional opportunity to be heard. *See id*.

On October 4, 2017, petitioners filed a motion for review of the special master's fee determination. *See generally* Pet'r's Mot. Petitioners claim that the special master committed legal errors and abused his discretion "by failing to provide specificity as to the reasons to decrease the fees . . . [and] allow for a meaningful review of his decisions." *Id.* at 2. The government filed a response opposing this motion on October 30. *See generally* Resp't's Resp. All issues have been fully briefed and argued and are now ready for disposition.

**STANDARDS FOR DECISION**

When reviewing a special master's judgment in a Vaccine Act case, courts employ one or more of three distinct standards: "Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Munn v. Secretary of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 & n.10 (Fed. Cir. 1992). "The determination of the amount of reasonable attorneys' fees is within the special master's discretion" and therefore reviewed under the abuse of discretion standard. *See Saxton ex rel. Saxton v. Secretary of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). (citing *Hines v. Secretary of Dep't of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991)); *accord, Silva v. Secretary of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) ("A special master's determination of attorneys' fees and costs is entitled to deference. So long as the special master has considered the relevant evidence of record, drawn plausible inferences, and stated a rational basis for the decision, reversible error is extremely difficult to establish.") (internal quotation marks, brackets, and citations omitted).

"Even so, percentage reductions [of attorneys' fee awards] 'are subject to heightened scrutiny.'" *Raymo*, 129 Fed. Cl. at 702 (citing *Guerrero v. Secretary of Health & Human Servs.*, 120 Fed.Cl. 474, 481-82 (2015) (quoting *International Rectifier Corp. v. Samsung Elecs. Co.*, 424 F.3d 1235, 1239 (Fed. Cir. 2005))). "The special master must provide a concise but clear explanation as to why the fee reduction is justified" but need not "explain how many hours are appropriate for any given task." *Id.* (internal citations omitted). A special master abuses his discretion when his "decision is: [(1)] clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the [special master] rationally could have based [his] decision." *Simmons v. Secretary of Health & Human Servs.*, 875 F.3d 632, 635 (2017) (quoting *Hendler v. United States,* 952 F.2d 1364, 80 (Fed. Cir. 1991)).

**ANALYSIS**

When a petitioner is awarded compensation under the Vaccine Act, "the special master or the court *shall* also *award* as part of such compensation an amount to cover . . . *reasonable attorneys' fees*, and . . . other costs[] incurred in any proceeding on such petition." 42 U.S.C. § 300aa-15(e)(1) (emphasis added). When a petitioner is not awarded compensation under the Act, he or she may only receive reasonable attorneys' fees and costs if "the petition was brought in good faith and" its claims were supported by "a reasonable basis." *Id.* To determine "reasonable attorneys' fees," courts employ the "lodestar approach." *See Avera v. Secretary of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008) (citing *Saxton*, 3 F.3d at 1521). "Using the lodestar approach, a court first determines an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Employing the lodestar approach in this case, the special master determined that both the billing rates of Ms. Roquemore and her paralegal were reasonable. *Kukreja*, 2017 WL5383097 at *2. As noted, petitioner challenges the downward adjustments made by the special master to the hours expended by Ms. Roquemore.

*A.   Pre-Appearance Award Reduction*

Petitioners argue that in excluding from the fees award all hours recorded by Ms. Roquemore before she appeared, the special master arbitrarily based the reduction on speculation that Mr. Roquemore's failure to appear was of a "tactical nature." Pet'r's Mot. at 7 (quoting *Kukreja*, 2017 WL 5383097, at *3). Petitioners maintain that the special master's analysis is not focused on the reasonableness of the hours expended, the applicable standard, but on the "untoward quality" of Ms. Roquemore's conduct and the need to "not . . . encourage[ such behavior] in the future." *See id.* (citing *Kukreja*, 2017 WL 5383097, at **3-4).

The special master stated that he was "alarmed" by Ms. Roquemore acting as a "shadow counsel just waiting for the right time to appear." *Kukreja*, 2017 WL 5383097, at *3. Further, he adverted to Ms. Roquemore's "role in . . . misleading [him] into believing that [the Kukrejas] were proceeding *pro se*." Order Den. Recons. at 2. Petitioners contend that "no nefarious intent existed," the statute of limitations was approaching quickly, Ms. Roquemore did not have time to file an emergency petition for the Kukrejas, and she advised them to proceed *pro se* with her limited assistance. *See* Pet'r's Mot. at 7-8. Petitioners' counsel avers that it is her "ordinary business practice" to refrain from filing any case until she can "ensur[e] a reasonable basis exists" and has "all the facts," but that she did not have the time to develop that predicate before the Kukrejas had to file to satisfy the statute of limitations. *Id.* at 8. The special master was unconvinced by these arguments, reasoning that "[i]t is reasonable to place *some* risk on a lawyer to evaluate a claim's strength and likelihood of success, since that is the risk non-[v]accine [p]rogram lawyers . . . routinely face. . . . Counsel cannot expect a fees award where she has waited until the 'coast is clear' to appear at all." Order Den. Recons. at 4 (emphasis in original).

Petitioners claim that there is no relevant difference between permitting counsel to file an emergency petition prior to having all of the information and advising a would-be client who is proceeding *pro se* until counsel can gather relevant information about the case and establish a

5

reasonable basis. *See* Pet'r's Mot. at 8. The special master's response to petitioners' analogy was that it "misses the point[] and evades squarely confronting what is so fundamentally objectionable about counsel's conduct in this matter," namely the undisclosed nature of the representation. Order Den. Recons. at 4.

A "special master can rely upon his past experiences with the vaccine program to determine whether the time expended on a particular task is justified." *Davis v. Secretary of Health & Human Servs.*, 105 Fed. Cl. 627, 638 (2012) (citing *Saxton*, 3 F.3d at 1521). But he must also "provide[] lucid explanations for his reductions," *see id.*, which, at a minimum, require addressing facts bearing on the standard at issue, reasonableness. Structural and institutional concerns about incentives and the functioning of the program can play into this inquiry and resulting exegesis, but they do not necessarily shed light on whether hours expended by counsel on a particular task were reasonable.

It is apparent from Ms. Roquemore's billing entries that for some months she spent time and effort reviewing D.K.'s medical records and advising the Kukrejas in proceeding *pro se*. But that effort did not by itself lead to establishing a reasonable basis. Notably, in prior vaccine cases, the government has emphasized the need for a medical opinion to support causation and reasonable basis. *See Rehn*, 126 Fed. Cl. at 93 ("In arguing that [petitioner's counsel] did not have a reasonable basis for the claim, the government emphasizes that when the petition was filed, [petitioner's counsel] had not yet secured a medical opinion that the flu vaccine caused petitioner's injuries."); *McKellar v. Secretary of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011) ("Respondent asserts that a reasonable basis cannot be present when medical records are not filed with the petition."). In this instance, the medical records did not by themselves provide strong evidence that supported causation, apart from temporal proximity of the vaccination and onset of symptoms, and expert medical opinion was desirable for that purpose. Any objection that Ms. Roquemore could have established a reasonable basis more quickly is ultimately unavailing. *See* Resp't Resp. at 9. First, the pre-appearance hours were not merely reduced but categorically excluded. Second, there has been no dispute regarding petitioners' timeline, that Ms. Roquemore worked to secure expert medical assistance and received a draft of an expert report, then determined that there was a reasonable basis, and within days thereafter filed a motion for substitution. In the circumstances, it was reasonable for Ms. Roquemore to secure expert medical assistance in the form of a draft expert report before determining that she had a reasonable basis and making her appearance.

As a general matter, institutional and policy concerns do not justify the categorical exclusion of all the hours expended by Ms. Roquemore for pre-appearance work. And on the facts at hand, the special master abused his discretion in categorically excluding all pre-appearance work performed by Ms. Roquemore on the Kukrejas' behalf.

This is not to say that all of the hours expended on pre-appearance work were justified. Ms. Roquemore should be compensated for the work that eventually became the foundation of the case, namely work to establish a reasonable basis. But any hours expended prior to the initiation of such efforts cannot reasonably be included in the lodestar calculation of a fees award. Based upon Ms. Roquemore's detailed billing records, the court has determined that her actual preparatory work began on July 16, 2014 when Ms. Roquemore began reviewing the

"medical record summary" and working with Dr. Steinman, a medical expert. *See* Pet'rs' Mot. for Att'ys' Fees Ex. 2, at 4. This triggering date reduces the requested pre-appearance award of $16,646, *see Kukreja*, 2017 WL 5383097, at *4, by 30.7 hours and $5,566.50. The remaining $11,079.50 in pre-appearance attorneys' fees represents reasonable hours expended in establishing a reasonable basis and preparing the Kukrejas' case. It shall therefore be awarded to petitioners.

### B. Post-Appearance Award Reduction

The special master's reduction of all work done after Ms. Roquemore's appearance (less the hours spent on the motion for reconsideration) by twenty percent was explained in cryptic terms by the special master. He reasoned that a percentage reduction was justified due to the "gross disparity" between the $15,000 settlement and the $80,410.20 fees award requested, and because Ms. Roquemore exercised poor billing judgment as exemplified by "bill[ing] nearly 6 hours to prepare for status conferences that were merely for scheduling." *Kukreja*, 2017 WL 5383097, at *4 & n.7. By the percentage reduction, the special master said he sought to "achieve the 'rough justice' that the Supreme Court instructs [him to] aim for." *Id.* at 4 (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). He noted that "even if only the post-appearance period is considered, Ms. Roquemore billed more than $60,000.00[—]*four times* the settlement amount." Order Den. Recons. at 5 (emphasis in original). He tied the rationales for his reduction together by concluding that "substantial discrepanc[ies] between the settlement sum and time devoted to obtain it" are "[o]ne valid piece of evidence suggesting that insufficient judgment was exercised in this case." *Id*.

Among the factors that courts consider when determining reasonableness of attorneys' fees, "[t]he most critical factor . . . is the degree of success obtained." *See Lost Tree Village Corp. v. United States*, __ Fed. Cl. __, __, 2017 WL 5425051, at *3 (brackets and internal quotation marks omitted) (citing *Hubbard v. United States*, 480 F.3d 1327, 1332 (Fed. Cir. 2007)). But the degree of success is not measured solely in terms of the damages awarded but rather in terms of claims. Just as "there is no authority for awarding a windfall on the basis of results achieved," *id.* (internal brackets and ellipses omitted), there is no authority for penalizing attorneys for underwhelming compensatory awards. In this case, petitioners brought a single claim for compensation, and, via stipulation, petitioners were successful on that claim. There is no evidence that the seemingly small damages award was due to any incompetence or failing on Ms. Roquemore's part.

Furthermore, "the standard for reasonableness is not retrospective" but prospective. *Lost Tree Village*, ___ Fed. Cl. at ___, 2017 WL 5425051, at *5. The special master's analysis fixates on the settlement amount but such a focus is inherently retrospective. When considered prospectively, the special master described the case as "proceed[ing] on a litigation track." *Kukreja*, 2017 WL 5383097 at *2. The entitlement hearing was scheduled for October 2016, and the order providing the parties time to discuss a settlement was issued very shortly before, on September 30, 2016. *See id.* The attorneys' hours at issue consequently reflect preparation for a full entitlement hearing. As an attorney, Ms. Roquemore controls the means of the litigation, but she does not control the object of the suit; it would not be justice, rough or otherwise, to penalize

7

her for taking reasonable steps to prepare for the hearing simply because her client decided to pursue settlement shortly before that hearing was to take place.

Additionally, the special master's observation that Ms. Roquemore billed "nearly 6 hours to prepare for status conferences," *Kukreja*, 2017 WL 5383097, at *4 & n.7, is accurate but understates the context. Four status conferences were involved. The first, on March 12, 2015, principally appears to have addressed the timing of an expert report. Pet'rs' Mot. for Att'ys' Fees Ex. 2, at 17. The second, on June 15, 2015, concerned both respondent's expert reports, a potential supplement to petitioners' expert report, and the possibility of a further expert report. *Id*. at 21. The third, on September 28, 2015, focused on petitioners' expert reports and potential dates for the evidentiary hearing. *Id*. at 30.[3] The fourth, on November 13, 2015, related to detailed aspects of the evidentiary hearing. *Id*. at 35. In each instance, Ms. Roquemore also conferred with petitioners, either before the status conference or afterwards, or both. The time expended by Ms. Roquemore on these activities does not appear to be excessive, but rather reasonable and justified. Counsel had an obligation to prepare for status conferences in light of a looming evidentiary hearing. Similarly, counsel was obliged to keep petitioners informed about the progress of the case. In short, the special master's criticism of the hours expended for the status conferences and for communications with petitioners does not support the percentage reduction in fees.

The special master also denied petitioners' request for fees and costs for the preparation of the motion for reconsideration in the sum of $6,345.60, describing it as a request "for which the adjective 'bold' does not go far enough." *See* Order Den. Recons. at 6 & n.6; *see also* Pet'r's Mot. at 12. The court does not find this request to be so bold. Because the government did not object to petitioners' fee application and because there was never any hearing on the question of fees and costs, the petitioners never had any opportunity to address any of the special master's concerns prior to his decision on fees. Moreover, it was not until the special master issued his order denying petitioners' motion for reconsideration that the special master offered a more detailed explanation of his reasoning. It therefore was reasonable for Ms. Roquemore to seek an opportunity to address the special master's concerns over the reasonableness of her fee application. Accordingly, a further $6,345.60 shall be awarded to petitioners.

## CONCLUSION

For the reasons stated, the motion for review of the special master's Attorneys' Fee Decision is GRANTED IN PART and DENIED IN PART. The Attorneys' Fee Decision is in part REVERSED and in part AFFIRMED. Petitioners shall receive attorneys' fees for the pre-appearance legal work performed on and after July 16, 2014 in the amount of $11,079.50, but not for the pre-appearance work performed before that date. Petitioners shall also receive non-discounted fees for post-appearance legal work, adding $12,752.84, as well as fees and costs of $6,345.60 for legal work done on the motion for reconsideration and $7,622.10 for legal work

---

[3]A further conference cited by the special master was not before the special master but rather occurred between Ms. Roquemore and petitioners, see *Kukreja*, 2017 WL 5383097, at *4 & n.7 (citing Pet'rs' Mot. for Att'ys' Fees Ex. 2, at 32), and related to substantive aspects of petitioners' expert reports.

8

done on the motion to review.  The amount of $37,800.04 shall be added to the award by the special master of $74,228.72 for attorneys' fees and costs and $9,164.04 for petitioners' own litigation expenses—for an overall total of $121,192.80.  The clerk shall enter judgment accordingly.

      It is so **ORDERED**.

                                              s/ Charles F. Lettow
                                              Charles F. Lettow
                                              Judge